UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KATHRYN A. LAPLANTE, | |
| Plaintiff, | Case No. 22-cv-10035 |
| | Honorable Denise Page Hood |
| | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 12, 16)**

## I.      Introduction

Plaintiff Kathryn A. LaPlante appeals the final decision of defendant Commissioner of Social Security (Commissioner) denying her[1] application for child disability benefits (CDB) and supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28

---

[1] LaPlante identifies as non-binary but is comfortable with either gendered or neutral pronouns.  ECF No. 12, PageID.1823 n.1.  The Court adopts LaPlante's attorney's practice of using feminine pronouns.

U.S.C. § 636(b)(1)(B).  ECF No. 12; ECF No. 16.  After review of the record, the Court **RECOMMENDS** that:

- LaPlante's motion (ECF No. 12) be **DENIED**;

- the Commissioner's motion (ECF No. 16) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**II.    Background**

### A.  LaPlante's Background and Disability Application

Born in May 1999, LaPlante was 19 years old when she applied for CDB and SSI in November 2018, with an alleged disability onset date of May 2017.  ECF No. 8-2, PageID.48, 51.  She had no past relevant work. *Id.* at PageID.65.  LaPlante claimed disability from endometriosis with pelvic pain, interstitial cystitis, intractable migraines, post-traumatic stress disorder, dyslexia with learning disabilities, binge eating disorder, insomnia, hip impingement/deformity in both hip joints, scoliosis, and irritable bowel syndrome with lactose intolerance.  ECF No. 8-3, PageID.177.

After a hearing, during which LaPlante and a vocational expert (VE) testified, the ALJ found LaPlante not disabled.  ECF No. 8-2, PageID.48, 66.  The Appeals Council denied review, making the ALJ's decision the

final decision of the Commissioner.  *Id.* at PageID.29.  LaPlante timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

3

(RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that LaPlante was not disabled.  At the first step, she found that LaPlante had not engaged in substantial gainful activity since the alleged onset date of May 21, 2017. ECF No. 8-2, PageID.51.  At the second step, the ALJ found that LaPlante had the severe impairments of migraines/menstrual migraines, fibromyalgia, pseudo seizures, synovial plica syndrome of the bilateral knees, right hip impingement syndrome, interstitial cystitis (status-post cystoscopy), pelvic pain syndrome, attention deficit hyperactivity disorder, generalized anxiety disorder, bipolar disorder, binge eating disorder, and conversion disorder.  *Id.* at PageID.52.  Next, the ALJ concluded that none of LaPlante's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id.* at PageID.53.

4

Between the third and fourth steps, the ALJ found that LaPlante had

the RFC to perform light work,[3] except that she could

> never climb ladders, ropes, or scaffolds, and can occasionally
> climb ramps and stairs, balance, crouch, kneel, stoop, and
> crawl.  They cannot work around unprotected heights,
> unprotected moving mechanical machinery, or around areas
> where the individual will be exposed to large bodies of open
> water, open flames, or sharp unprotected implements.  They
> can have occasional exposure to extreme cold, heat, humidity,
> and wetness along with dust, fumes, odors, gases, and other
> pulmonary irritants.  The claimant cannot be exposed to more
> than moderate noise as defined in the Dictionary of
> Occupational Titles.  They cannot perform any commercial
> driving.  The claimant can understand, remember, and carry out
> simple, routine tasks but not a production rate pace such as
> required working on an assembly line or conveyor belt.  They
> can make judgments on simple work, and respond
> appropriately to usual work situations and changes in a routine
> work setting with few and occasional changes.  The claimant
> can have occasional interaction with the general public,
> supervisors, and coworkers although they cannot engage in
> direct public service work with the general public and with
> coworkers, cannot engage in team or tandem tasks.

*Id.* at PageID.55.  At step four, the ALJ found that LaPlante had no past

relevant work.  *Id.* at PageID.65.  At the final step, after considering

LaPlante's age, education, work experience, RFC, and the testimony of the

VE, the ALJ determined that there were jobs in significant numbers that

---

[3] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday.  20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Regulation (SSR) 83-10.

LaPlante could perform, including positions as an office helper/clerical assistant, mailroom clerk, racker, document preparer, addresser, and surveillance system monitor. *Id.* at PageID.65-66.

## III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[4] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

---

[4] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

6

substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

LaPlante argues that the Court should remand this matter because (1) the ALJ erred by finding that her pseudo seizures did not meet or medically equal Listing 11.02 and (2) the ALJ did not properly evaluate LaPlante's migraine headaches, pseudo seizures, and subjective complaints in forming the RFC.  ECF No. 12.  The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

LaPlante first argues that the ALJ insufficiently addressed whether her pseudo seizures met or medically equaled the requirements of Listing 11.02.  *Id.* at PageID.1837-1840.

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless

7

of his or her age, education, or work experience.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411, 414 (6th Cir. April 1, 2011) (quoting 20 C.F.R. § 404.1525(a)).  "A claimant must satisfy all of the criteria to meet the listing."  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)(3)).  An impairment is medically equivalent to a listing if "it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a). To support her argument that the ALJ committed reversible error by failing to properly analyze a listing, LaPlante "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing."  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).  "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three."  *Id.* at 433.

Listing 11.02 applies to epilepsy and details criteria that would satisfy step three.  20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 11.02.  The listing defines epilepsy as "a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain."  *Id.*, Listing 11.00(H).  It states that "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02," and are evaluated under Listing 12.00, applicable to mental disorders.  *Id.*

8

There is no dispute that LaPlante has nonepileptic pseudo seizures, so Listing 11.02 does not apply.  *See, e.g.*, ECF No. 8-8, PageID.1266, 1285.

Listing 12.07 applies to somatic symptom disorders, including pseudo seizures.  *Id.*, Listing 12.00(B)(6).  The listing requires assessing "paragraph B criteria."  *Id.*, Listing 12.07.  As the ALJ explained:

> To satisfy the "paragraph B" criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning: the ability to understand, remember, or apply information; interacting with others; concentration, persistence or maintenance of pace; and the ability to adapt or manage oneself.

ECF No. 8-2, PageID.53.  The ALJ found that LaPlante had moderate limitations in all four functional areas.  *Id.* at PageID.54.  With no marked or extreme limitations, LaPlante did not meet the paragraph B criteria.  Since she does not dispute the ALJ's B-criteria findings in her motion or reply, the ALJ's step three analysis should be affirmed.

### C.

LaPlante also challenges the RFC, arguing that the ALJ failed to properly evaluate the limiting effects of her migraine headaches and pseudo seizures, and disregarded her subjective complaints.  ECF No. 12, PageID.1831-1837, 1840-1847.  The Court evaluates those arguments in turn.

**1.**

LaPlante argues that the ALJ improperly relied on physical examination findings in evaluating her migraines.  ECF No. 12, PageID.1833.  In her opinion, the ALJ noted that LaPlante's physical examinations were normal, with "no cranial nerve deficit, or decreased strength or sensation."  ECF No. 8-2, PageID.61-62.  LaPlante insists that "the severity of migraine headaches is not assessed based on head size, trauma, cranial nerve deficits, or the like."  ECF No. 12, PageID.1833.

Other courts have found that neurological tests cannot "confirm either the existence of migraines or their likely severity."  *Strickland v. Barnhart*, 107 F. App'x 685, 689 (7th Cir. 2004); *see also Luna v. Colvin*, No. 13-1289, 2014 WL 5598248, at *6 (D. Kan. Nov. 4, 2014) ("That the records do not support the severity of migraines alleged is unremarkable because there is no objective test which can reveal the severity of headache pain."). Since the ALJ analyzed LaPlante's migraines and pseudo seizures in the same paragraph, it is unclear whether the ALJ considered the physical examination findings relevant to her evaluation of migraines.  *See* ECF No. 8-2, PageID.61-62.  In any case, the ALJ did not rely solely on those findings in concluding that the migraines were not disabling; she also cited

treatment records showing improvements with medication.  ECF No. 8-2, PageID.61-62.

While LaPlante disputes whether her symptoms improved, the ALJ's analysis is supported by substantial evidence.  In May 2017, LaPlante reported having headaches daily, with one headache a week that was severe while the rest were tolerable.  ECF No. 8-8, PageID.1337.  LaPlante said that her headaches improved and were less frequent with increased Trokendi and Phenergan.  *Id.*  In December 2017, LaPlante again stated that Trokendi was "somewhat helpful" for her headaches and that her daily headaches were not interfering with her functioning.  *Id.* at PageID.1315. Fioricet also decreased headache severity but did not fully abort them.  *Id.* Although LaPlante reported new stress migraines in February 2019, she admitted that she had stopped taking one of her medications after a month of use because it caused hypertension.  *Id.* at PageID.1294-1295.  Noting that several medications proved ineffective for LaPlante's migraines and that she declined Botox injections, her provider prescribed Aimovig.  *Id.* at PageID.1292, 1295.

In October 2019, LaPlante reported that Aimovig helped reduce headache frequency, as she had only one to three severe headaches per month.  *Id.* at PageID.1265-1266.  And her headache symptoms only

11

somewhat interfered with her ability to function.  *Id.*  In December 2019, LaPlante's provider noted that her migraines were "under very good control" with Aimovig.  *Id.* at PageID.1260.  When LaPlante's insurance would no longer pay for Aimovig, she applied for financial assistance through the manufacturer.  *Id.*  LaPlante restarted Aimovig in February 2020.  *See id.* at PageID.1292 (prescribing monthly injections of Aimovig); ECF No. 8-9, PageID.1813 (April 2020 treatment record noting that LaPlante had three injections since restarting Aimovig).  LaPlante stated that Aimovig was less effective since she restarted it and reported having five to six severe headaches per month.  ECF No. 8-9, PageID.1813.  But LaPlante's provider decided to continue Aimovig for a few more months to see if her symptoms would improve.  *Id.* at PageID.1812.

LaPlante disputes the ALJ's reliance on treatment records showing overall improvement, citing cases holding that improvement does not equate to the ability to work.  ECF No. 12, PageID.1834-1835.  But in those cases, the ALJ cited no records showing improvement in the severity of symptoms or their limiting effects.  *Sacilowski v. Saul*, 959 F.3d 431, 439 (1st Cir. 2020); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). In contrast, LaPlante reported that medication improved her headaches and that the migraines only somewhat interfered with her ability to function.

*See* ECF No. 8-8, PageID.1265-1266, 1315.  And her provider stated that her migraines were well controlled.  *Id.* at PageID.1260.  Evidence of improvement in claimants' symptoms and functional abilities can support a denial of disability benefits.  *See Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014).

LaPlante argues that Aimovig became unavailable when her insurer declined to cover it.  ECF No. 19, PageID.1894-1895.  As described above, she missed only one dose of Aimovig in January 2020 and resumed it the next month.  *See* ECF No. 8-8, PageID.1292; ECF No. 8-9, PageID.1813. LaPlante also contends that Aimovig was less effective when she restarted it.  ECF No. 19, PageID.1894-1895.  But she said that her headache intensity was better with Aimovig, and her provider prescribed another medication for menstrual migraines.  ECF No. 8-8, PageID.1812-1813.

Next, LaPlante claims that the ALJ improperly discounted her subjective complaints based on her noncompliance with treatment.  ECF No. 12, PageID.1836, 1845-1846.  LaPlante admitted during the hearing that she stopped taking her migraine medication because it made her feel "weird."  ECF No. 8-2, PageID.139-140.  "While adverse side effects are a reasonable excuse for an applicant to interrupt a prescribed treatment regimen," noncompliance can justify discounting a claimant's subjective

complaints.  *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 789 (6th Cir. 2017).

LaPlante admitted that she did not tell her doctor about any side effects.  ECF No. 8-2, PageID.140.  And the record shows that she consistently reported no side effects from her medications.  ECF No. 8-8, PageID.1266, 1315, 1337; ECF No. 8-9, PageID.1814.  "Allegations of a medication's side effects must be supported by objective medical evidence."  *Lorenz v. Berryhill*, No. 18-13793, 2020 WL 1818047, at *6 (E.D. Mich. Jan. 24, 2020).  And "[w]here, as here, a claimant testifies that she experiences medication side effects, but the medical records make no indication that she reported medication side effects to her physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from her medications."  *Nyhus-Dell v. Comm'r of Soc. Sec.*, No. 18-CV-10132, 2019 WL 2051895, at *4 (E.D. Mich. Feb. 5, 2019), *adopted*, 2019 WL 1349617 (E.D. Mich. Mar. 26, 2019).  The ALJ did not err in considering LaPlante's noncompliance with taking her medication.[5]

---

[5] LaPlante also argues without citation to evidence that the ALJ ignored whether her mental impairments contributed to her noncompliance.  ECF No. 12, PageID.1846.  But an ALJ may consider a claimant's noncompliance when no evidence links that noncompliance to a mental impairment.  *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018); *Harris v. Comm'r or Soc. Sec.*, No. 14-cv-14508, 2015 WL 7307972, at *4 (E.D. Mich. Nov. 20, 2015) ("[B]ecause Harris did not present

Finally, LaPlante contends that the RFC does not account for the time she would be off task because of her migraines. ECF No. 12, PageID.1836-1837. LaPlante, who must show how her migraines "limited her ability beyond the ALJ's RFC," fails to meet this burden by citing "medical evidence connecting [her migraines] to specific functional limitations." *See Simpkins v. Comm'r of Soc. Sec.*, No. 20-10673, 2021 WL 4198404, at *3 (E.D. Mich. Apr. 8, 2021), *adopted*, 2021 WL 3771874 (E.D. Mich. Aug. 25, 2021).

Thus, the ALJ made no reversible error in evaluating LaPlante's migraines.

## 2.

LaPlante next argues that the ALJ failed to properly consider the effects of her pseudo seizures. ECF No. 12, PageID.1840-1841. She contends that the ALJ erred by disregarding symptoms caused by a psychogenic disorder simply because they did not correlate with any objective findings. *Id.* To be sure, "an ALJ cannot simply ignore medical evidence that claimant suffers from pain having its origin in a psychological disorder." *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003)

---

evidence that her mental impairments actually prevented her from seeking counseling, the ALJ did not err when he determined that her failure to seek counseling weighed against a finding that she was disabled.").

(cleaned up); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits.").

After summarizing LaPlante's treatment records, the ALJ concluded that her symptoms were not as disabling as she alleged, as objective testing and examinations were normal.  ECF No. 8-2, PageID.61-62.  The ALJ noted that LaPlante's neurologist's office advised her to follow up with psychiatry for her pseudo seizures.  *Id.* at PageID.61.  But the ALJ also considered LaPlante's psychiatric treatment records, including visits with psychiatrists Vishwas Mashalkar, M.D., and Kettlie Daniels, M.D.  *Id.* at PageID.57-63.  And the ALJ considered Dr. Mashalkar's opinion that the pseudo seizures "should not limit [LaPlante's] ability to work," finding it somewhat persuasive.  *Id.* at PageID.63 (citing ECF No. 8-8, PageID.1392).

LaPlante argues that Dr. Mashalkar likely stated that her pseudo seizures would not limit her ability to work to encourage positive thinking.  ECF No. 12, PageID.1841-1842.  But the record supports the ALJ's view that Dr. Mashalkar believed LaPlante was psychologically able to work.  In January 2019, Dr. Mashalkar warned LaPlante that her functioning would not improve by staying home and encouraged her to do something

16

productive.  ECF No. 8-8, PageID.1192.  In July and August 2019, Dr.

Mashalkar urged LaPlante to start work and discouraged her from applying

for disability.  *Id.* at PageID.1386, 1389.  Thus, the ALJ's interpretation of

Dr. Mashalkar's opinion is supported by substantial evidence, and the

Court cannot reweigh the evidence to adopt LaPlante's alternative

interpretation of that opinion.  *See Steif v. Comm'r of Soc. Sec.*, No. 16-

11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017), *adopted*,

2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

     LaPlante also argues that, if the ALJ correctly interpreted Dr.

Mashalkar's opinion, she should have rejected the opinion because it

contradicts the evidence.  ECF No. 12, PageID.1842.  ALJs must assess

and articulate the persuasiveness of all opinions from both treating and

non-treating sources by considering several factors, the most important

being the opinion's supportability and consistency with the record evidence.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(a).  Under the supportability factor,

the more relevant "objective medical evidence and supporting explanations

presented by a medical source to support his or her medical opinion," the

more persuasive the medical opinion will be.  §§ 404.1520c(c)(1),

416.920c(c)(1).  An opinion that is more consistent with the evidence from

other medical sources and nonmedical sources is also more persuasive. §§ 404.1520c(c)(2), 416.920c(c)(2).

Substantial evidence supports that ALJ's findings that Dr. Mashalkar's opinion was consistent with the record and that LaPlante's pseudo seizures were not disabling.  The ALJ summarized LaPlante's treatment with Dr. Mashalkar from 2017 through 2019.  ECF No. 8-2, PageID.57-62.  Those records show that LaPlante struggled with her mood and anxiety and sometimes had an abnormal thought pattern and was easily distracted.  ECF No. 8-8, PageID.1083-1084, 1088, 1091, 1095-1096, 1100, 1104, 1112, 1189-1190, 1392-1393.  But she was cooperative and had normal cognition and memory, fair insight and judgment, and often had fair to normal concentration.  *Id.* at PageID.1091, 1096, 1100, 1112, 1382, 1387, 1390, 1392-1394.  In mid-2019, LaPlante began reporting pseudo seizures.  *Id.* at PageID.1384, 1389, 1392.  Despite her symptoms, Dr. Mashalkar consistently encouraged LaPlante to work and advised her to stop seeking specialist care since the symptoms were psychogenic and she could learn to control them.  *Id.* at PageID.1192, 1381, 1384, 1386, 1389.

LaPlante started seeing Dr. Daniels and in February 2020 discussed her goal of learning to drive and remaining seizure-free for six months.

18

ECF No. 8-9, PageID.1782, 1787.  In April 2020, LaPlante told Dr. Daniels that she felt a seizure coming on but that she "worked through" it and that the impact was minimal.  *Id.* at PageID.1800.  Dr. Daniels's treatment notes do not document other pseudo seizures and repeatedly state that LaPlante's health was stable.  *See, e.g.*, *id.* at PageID.1784, 1787, 1789, 1792, 1796, 1798.

Other records show that LaPlante reported that Ativan relieved her symptoms and aborted a pseudo seizure, and that Zonegran reduced the frequency of pseudo seizures.  *Id.* at PageID.1271, 1289-1290.  Though LaPlante reported having two to three pseudo seizures per week in April and May 2019, she reported none in August 2019 and three per month in October 2019.  *Id.* at PageID.1264, 1271, 1285, 1289.  All neurological and physical examination findings during this period were normal.  *Id.* at PageID.1266-1267, 1272, 1280-1281, 1285-1286, 1290-1291.  Since these records support Dr. Mashalkar's assessment, the ALJ did not err by finding it somewhat persuasive.

Last, LaPlante argues that the ALJ disregarded her fatigue in forming the RFC, citing her testimony that she falls asleep after having pseudo seizures.  ECF No. 12, PageID.1842 (citing ECF No. 8-2, PageID.148).  But the ALJ need not accept LaPlante's subjective functional reports.  *See*

19

*Jones v. Comm'r of Soc. Sec.*, No. 20-11851, 2021 WL 4205061, at \*3

(E.D. Mich. June 30, 2021), *adopted*, 2021 WL 3629897 (E.D. Mich. Aug.

17, 2021).  And since LaPlante cites no objective evidence showing a need

for greater RFC restrictions, she has not carried her burden.  *Id.*

The ALJ did not err in evaluating the limiting effects of LaPlante's

pseudo seizures.

**3.**

LaPlante also summarily argues that the ALJ ignored her statements

about her limited daily activities.  ECF No. 12, PageID.1847.  The ALJ

summarized LaPlante's testimony about her limitations but found it

conflicted with the record.  ECF No. 8-2, PageID.56, 61.  Except as

addressed above, LaPlante does not explain how the ALJ's reasoning was

flawed or how her alleged limitations would affect the RFC.  Thus, the

Court declines to address this undeveloped argument.  *See McPherson v.

Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived." (cleaned up)).

**IV.   Conclusion**

The Court **RECOMMENDS** that LaPlante's motion for summary

judgment (ECF No. 12) be **DENIED**, the Commissioner's motion for

summary judgment (ECF No. 16) be **GRANTED**, and the ALJ's decision be

**AFFIRMED** under sentence four of 42 U.S.C. § 405(g).


                                        s/Elizabeth A. Stafford
                                        ELIZABETH A. STAFFORD
                                        United States Magistrate Judge


Dated: January 26, 2023


### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2023.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager

22